# Exhibit 2
# to Supplemental Declaration of Alanna B. Carbis in Support of Reply Memorandum of Law in Support of Petition to Enforce Civil Investigative Demand and Request for Judicial Notice

EXHIBIT 2
73

[ARGUED APRIL 12, 2016; DECIDED OCTOBER 11, 2016]

No. 15-1177

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

PHH CORPORATION, et al.,
Petitioners,

v.

CONSUMER FINANCIAL PROTECTION BUREAU,
Respondent.

_____

ON PETITION FOR REVIEW OF AN ORDER OF THE
BUREAU OF CONSUMER FINANCIAL PROTECTION

_____

**RESPONSE OF THE UNITED STATES TO
PETITION FOR REHEARING EN BANC**

_____

BENJAMIN C. MIZER
  *Principal Deputy Assistant Attorney
  General*

DOUGLAS N. LETTER
MARK B. STERN
DANIEL TENNY
TARA S. MORRISSEY
  *Attorneys, Appellate Staff
  Civil Division, Room 7215
  U.S. Department of Justice
  950 Pennsylvania Ave., N.W.
  Washington, D.C. 20530
  (202) 514-1838*

EXHIBIT 2
74

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION AND SUMMARY........................................................................ 1

STATEMENT ............................................................................................................ 4

ARGUMENT ............................................................................................................ 7

CONCLUSION ...................................................................................................... 15

CERTIFICATE OF SERVICE

EXHIBIT 2
75

# TABLE OF AUTHORITIES

**Cases:**                                                                                  **Page(s)**

*Blodgett v. Holden,*
    275 U.S. 142 (1927) ................................................................. 13

*Bowsher v. Synar,*
    478 U.S. 714 (1986) ............................................................... 3, 11

*Clinton v. City of N.Y.,*
    524 U.S. 417 (1998) ............................................................... 11, 12

*Escambia Cty. v. McMillan,*
    466 U.S. 48 (1984) .................................................................. 13

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) ............................................................ 1, 6, 14

*Greater New Orleans Broad. Ass'n v. United States,*
    527 U.S. 173 (1999) ................................................................. 14

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935) ............................................................. 1, 5, 9

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
    684 F.3d 1332 (D.C. Cir. 2012) ................................................ 14

*Landry v. Federal Deposit Ins. Corp.,*
    204 F.3d 1125 (D.C. Cir. 2000) .................................................. 6

*Morrison v. Olson,*
    487 U.S. 654 (1988) ........................................................ 1, 3, 7, 8

*Northwest Austin Mun. Util. Dist. No. One v. Holder,*
    557 U.S. 193 (2009) ................................................................. 13

*Printz v. United States,*
    521 U.S. 898 (1997) .................................................................. 2

*Stern v. Marshall,*
    564 U.S. 462 (2011) ................................................................. 11

EXHIBIT 2

*Wiener v. United States*,
  357 U.S. 349 (1958) ................................................................................. 1

**Constitution:**

U.S. Const., art. II:

  Sec. 1, cl. 1 ................................................................................. 10

  Sec. 2, cl. 1 ................................................................................. 10

**Statutes:**

12 U.S.C. § 5491(c)(3) ................................................................................. 5

12 U.S.C. § 5511(a) ................................................................................. 8

12 U.S.C. § 5511(c)(2) ................................................................................. 9

12 U.S.C. § 5512(c)(4)(B)(ii) ................................................................................. 9

12 U.S.C. § 5562(b)-(c) ................................................................................. 9

12 U.S.C. § 5563 ................................................................................. 9

15 U.S.C. § 45 (1934) ................................................................................. 9

15 U.S.C. § 46 (1934) ................................................................................. 9

15 U.S.C. § 46(b) (1934) ................................................................................. 9

15 U.S.C. §§ 49-50 (1934) ................................................................................. 9

**Other Authority:**

President William J. Clinton, Statement on Signing the Social
  Security Independence and Program Improvements Act of 1994,
  2 Pub. Papers 1471 (Aug. 15, 1994) ................................................................................. 2

EXHIBIT 2

# GLOSSARY

| | |
|---|---|
| CFPB | Consumer Financial Protection Bureau |
| FTC | Federal Trade Commission |

EXHIBIT 2
78

## INTRODUCTION AND SUMMARY

The United States respectfully responds to this Court's invitation to provide its views as amicus curiae with respect to the pending petition for rehearing en banc. Our brief addresses only the panel's separation-of-powers holding and not the other issues raised by the petition.

The Supreme Court in *Humphrey's Executor v. United States*, 295 U.S. 602, 629 (1935), held that Congress may "forbid [the] removal except for cause" of members of the Federal Trade Commission. Since that time, it has been established that Congress may impose removal restrictions covering the members of independent agencies. *See, e.g.*, *Wiener v. United States*, 357 U.S. 349, 356 (1958); *see also Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010) ("In *Humphrey's Executor*, we held that Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause.") (citation omitted); *Morrison v. Olson*, 487 U.S. 654, 724-25 (1988) (Scalia, J., dissenting) ("[R]emoval restrictions have been generally regarded as lawful for so-called 'independent regulatory agencies,' such as the Federal Trade Commission, the Interstate Commerce Commission, and the Consumer Product Safety Commission . . . .") (citation omitted).

The panel in this case concluded that these authorities do not support the constitutionality of the for-cause removal provision applicable to the head of the

EXHIBIT 2
79

Consumer Financial Protection Bureau (CFPB) because the CFPB is headed by a single individual, rather than a multi-member body.  The Constitution vests the executive power directly in a single person—the President—based on the Framers' conviction that "unity in the Federal Executive" is necessary "to ensure both vigor and accountability."  *Printz v. United States*, 521 U.S. 898, 922 (1997).  The conferral of broad policymaking and enforcement authority on a single person below the President, whom the President may not remove except for cause, therefore raises a significant constitutional question that the Supreme Court has not yet squarely confronted.  *See* President William J. Clinton, Statement on Signing the Social Security Independence and Program Improvements Act of 1994, 2 Pub. Papers 1471, 1472 (Aug. 15, 1994).  *Morrison* involved a single person, but she was an inferior officer and had checks and limitations on her authority that are not present here.  To date, the Supreme Court has sanctioned a limitation on the power to remove principal officers of the United States only for members of multi-member bodies.

While the Court's cases have not squarely addressed a structure like the one at issue here, the panel's approach to resolving its constitutionality departs from the approach the Supreme Court has applied in resolving such separation-of-powers questions.  The Supreme Court's removal jurisprudence is designed "to ensure that Congress does not interfere with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed'

2

EXHIBIT 2
80

under Article II." *Morrison*, 487 U.S. at 689-90; *see also id.* at 699 (Scalia, J., dissenting) (removal jurisprudence concerns "[t]he allocation of power among Congress, the President, and the courts in such fashion as to preserve the equilibrium the Constitution sought to establish").

The panel here did not conclude that the single-Director structure of the CFPB impairs the exercise of Presidential power more significantly than would a multi-member directorate. The panel also did not conclude that the CFPB exercises greater power than multi-member independent agencies, and a comparison of the functions performed by the Federal Trade Commission and other independent regulatory bodies, on the one hand, and those performed by the Director of the CFPB, on the other, does not furnish a basis for drawing a constitutional distinction between the agencies on those grounds.

The panel's opinion was, instead, premised on its view that an agency with a single head poses a greater threat to individual liberty than an agency headed by a multi-member body that exercises the same powers. Our constitutional structure, and the separation of powers in particular, are ultimately designed to protect individual liberty. *Bowsher v. Synar*, 478 U.S. 714, 721 (1986). To that end, the Supreme Court has considered whether "removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty." *Morrison,* 487 U.S. at 691. If they do not constitute such an impediment, the Supreme Court has not suggested

EXHIBIT 2
81

that a court should then undertake an additional inquiry into whether a single-headed
agency threatens individual liberty to a greater extent than a multi-headed agency.
While the effect of a particular statutory arrangement on individual liberty may shed
light on whether it constitutes an impermissible intrusion on Presidential power or on
the functioning of the Executive Branch, the possible impact on individual liberty has
not been an independent inquiry.

Because the panel's partial invalidation of the statute involves an important
constitutional question and rests on an analysis that is at odds with the relevant
Supreme Court precedent, review by the full Court is warranted.

## STATEMENT

Petitioners sought review of an order of the Consumer Financial Protection
Bureau that required PHH Corporation to pay $109 million in disgorgement.  This
Court invalidated the order on several grounds.  The Court held that the CFPB had
misinterpreted the Real Estate Settlement Procedures Act to prohibit so-called
"captive reinsurance arrangements" even if a mortgage insurer paid no more than
reasonable market value for the insurance.  Op. 73-79.  The Court also concluded that
the CFPB had impermissibly departed from consistent interpretations that had been
issued by the Department of Housing and Urban Development and had applied its
new interpretation to conduct that occurred before the new interpretation was issued,
violating the Due Process Clause.  Op. 79-89.  And it held that a three-year statute of

EXHIBIT 2

limitations applied to the administrative actions at issue here, setting aside the CFPB's determination that no statute of limitations applied.  Op. 90-100.  The Court stated that on remand, the CFPB could determine whether, within the three-year limitations period, mortgage insurers had paid more than reasonable market value in a captive reinsurance transaction.  Op. 100-01.

The Court further held that the structure of the CFPB is unconstitutional because its Director may be removed only for "inefficiency, neglect of duty, or malfeasance in office," 12 U.S.C. § 5491(c)(3).  The panel majority recognized that the Supreme Court held in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), that Congress could permissibly create "independent" agencies whose members are removable by the President based on the same standard.  But the panel majority concluded that *Humphrey's Executor* extended only to agencies headed by multi-member bodies and not to agencies headed by a single Director.

The panel observed that the creation of agencies headed by a single official removable for cause was a relatively recent innovation and that the lack of historical grounding was relevant in resolving the constitutional question.  Op. 27-42.  The panel noted that the structure of the CFPB might not, as compared to a multi-member agency, constitute a greater intrusion on the President's authority or a greater expansion of Congress's powers.  The panel concluded, however, that the structure

EXHIBIT 2

violated the separation of powers because it was less protective of individual liberty.

Op. 43-53.

In determining the consequences of its constitutional ruling, the panel applied

the Supreme Court's guidance in *Free Enterprise Fund v. Public Co. Accounting Oversight*

*Board*, 561 U.S. 477 (2010), and concluded that the appropriate remedy was to

invalidate the provision allowing only for-cause removal, while leaving the rest of the

statute intact.  Op. 65-69.  No party has sought further review of that holding.

Concurring, Judge Randolph stated that he would have also held that the

administrative law judge who presided over the agency hearing in this case (whose

decision was affirmed by the CFPB's Director) was improperly appointed, for the

reasons given in Judge Randolph's concurring opinion in *Landry v. Federal Deposit*

*Insurance Corp.*, 204 F.3d 1125, 1140-44 (D.C. Cir. 2000).  No party has sought

rehearing of the Court's decision to resolve the case without reaching that issue.

Judge Henderson concurred in part and dissented in part.  She agreed with the

Court's interpretation of the relevant statutes and its application of the Due Process

Clause.  Her dissent explained that she would not have reached the separation-of-

powers question, observing that "PHH has asked this Court to vacate the CFPB's

order," and that "PHH's statutory arguments are sufficient to accomplish its goal."

Op. of Henderson, J., at 1.  In response, the panel majority stated that if it had

reached a different conclusion on severability and accepted PHH's argument that the

EXHIBIT 2

entire CFPB should be eliminated, there would be no agency to which the Court could remand.  Op. 10-11 n.1.  The majority further reasoned that the Court should resolve the constitutional issue now to avoid unduly delaying ruling on a structural challenge.  Op. 11 n.1.

## ARGUMENT

1.  In evaluating the constitutionality of restrictions on the President's removal authority, the touchstone of the inquiry articulated by the Supreme Court has been whether the restriction impermissibly impedes the President's exercise of his duties or impermissibly expands the powers of Congress.  The centrality of this question is clear from the majority and dissenting opinions in *Morrison v. Olson*, 487 U.S. 654 (1988).  The majority opinion explained that the Supreme Court's "removal cases [are] designed . . . to ensure that Congress does not interfere with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II."  *Id.* at 689-90.  Thus, the "real question" under Article II is "whether the removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty."  *Id.* at 691.

Justice Scalia dissented, believing that the provisions at issue impermissibly intruded on the President's power.  Justice Scalia made clear, however, that he did not dispute the nature of the relevant inquiry: "That is what this suit is about.  Power. The allocation of power among Congress, the President, and the courts in such

7

EXHIBIT 2
85

fashion as to preserve the equilibrium the Constitution sought to establish." *Morrison*, 487 U.S. at 699 (Scalia, J., dissenting).

2.  The panel majority's analysis here departed from that separation-of-powers analysis.  The panel stated that, as between a single Director and a multi-member agency, "there is no meaningful difference in responsiveness and accountability to the President," Op. 56, and that it was "perhaps true" that "the single-Director structure is unlikely to give Congress any greater influence over the CFPB than Congress possesses over a multi-member independent agency," Op. 55.

The panel did not find that "the functions of the officials in question," *Morrison*, 487 U.S. at 691, would be a proper basis for invalidating the removal provision, and it did not suggest that the nature of the powers exercised by the CFPB was constitutionally distinguishable from the nature of those exercised by independent agencies such as the FTC.  Indeed, the powers vested in the CFPB in many respects resemble those exercised by the FTC at the time of *Humphrey's Executor*.  The CFPB is designed to promote market fairness and competition; its stated purpose is to "seek to implement and, where applicable, enforce Federal consumer financial law" to ensure that "all consumers have access to markets for consumer financial products and services," and that the markets for such products and services are "fair, transparent, and competitive."  12 U.S.C. § 5511(a).  At the time of *Humphrey's Executor,* the FTC was generally "empowered and directed to prevent persons, partnerships, or

EXHIBIT 2

corporations . . . from using unfair methods of competition in commerce." 15 U.S.C.
§ 45 (1934). Congress provided the two entities with similar tools to carry out their
mandates. The FTC had "wide powers of investigation" of regulated corporations,
*Humphrey's Executor*, 295 U.S. at 621; *see also* 15 U.S.C. § 46 (1934), and the CFPB also
has investigatory authority, *see* 12 U.S.C. § 5511(c)(2). Congress empowered both
entities to obtain reports from companies and to seek answers to questions in writing.
*Compare* 12 U.S.C. § 5512(c)(4)(B)(ii), *with* 15 U.S.C. § 46(b) (1934). Congress
authorized both entities to obtain documentary evidence and to issue subpoenas.
*Compare* 12 U.S.C. § 5562(b)-(c), *with* 15 U.S.C. §§ 49-50 (1934). And Congress
enabled both entities to file charges against regulated entities, to provide notice of
administrative hearings, and to issue cease-and-desist orders enforceable in federal
court. *Compare* 12 U.S.C. § 5563, *with* 15 U.S.C. § 45 (1934).

3. In explaining its holding that the for-cause removal provision was
nonetheless unconstitutional, the panel declared that "the Constitution's separation of
powers is not solely or even primarily concerned with preserving the powers of the
branches." Op. 58. Stating that the "separation of powers is primarily designed to
protect individual liberty," *id.*, the panel engaged in an analysis of the relative strengths
and weaknesses of various organizational structures for federal agencies in protecting
individual liberty, avoiding agency capture by regulated entities, and making reasoned
decisions. *See id.* at 44-49. The panel's analysis focused in particular on the extent of

EXHIBIT 2

"unilateral power" held by the Director of the CFPB.  The panel declared that the

single-Director structure, combined with "the CFPB's broad authority over the U.S.

economy," means that "other than the President, the Director of the CFPB is the

single most powerful official in the entire United States Government, at least when

measured in terms of unilateral power"—more powerful than other Executive Branch

officials such as the Secretary of Defense and the Secretary of State.  Op. 25.[1]

The panel's focus on the impact on individual liberty as a freestanding basis for

finding a separation-of-powers violation contravenes the analytical framework the

Supreme Court has applied.  Under the Supreme Court's approach, a court safeguards

individual liberty by preserving the constitutional design.  A removal restriction that

unduly impairs the ability of the President to carry out his executive responsibilities or

arrogates executive power to Congress violates that design and ultimately threatens

the values the Constitution is intended to protect.  Where a restriction does not

contravene these limitations, however, separation-of-powers principles do not call for

---

[1] There can be no serious dispute that the Constitution would not permit
Congress to replace the Secretary of Defense with an individual removable only for
cause.  The problem would not be ameliorated if Congress replaced the Secretary of
Defense with a five-member commission, even though none of the five members
would wield "unilateral power."  In either case, the removal provision would
impermissibly intrude on the executive power vested in the President, in particular as
Commander in Chief.  *See* U.S. Const., art. II, § 1, cl. 1; *id.* art. II, § 2, cl. 1.

EXHIBIT 2

a court to undertake an additional inquiry into the extent that an agency's structure
might be inimical to individual liberty.

The cases cited by the panel majority recognize that individual liberty is
preserved by faithfully maintaining the constitutional design, and not by engaging in
an independent analysis of the extent to which different structures preserve individual
liberty. *See* Op. 58-59.  In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court
observed that the life-tenure protections of Article III ensure that citizens receive
independent decisions from the judiciary. *Id.* at 483-84.  The Court vindicated those
rights by protecting the prerogatives of members of the Judicial Branch set out in the
Constitution, not by assessing which other features of a judicial system would
promote independent judgment.  In *Bowsher v. Synar*, 478 U.S. 714 (1986), the Court
recognized that the "declared *purpose* of separating and dividing the powers of
government, of course, was to diffuse power the better to secure liberty." *Id.* at 721
(emphasis added; brackets and quotation marks omitted).  But the Court achieved that
purpose by preventing Congress from exercising more power than the Constitution
contemplated.

Justice Kennedy's concurring opinion in *Clinton v. City of New York*, 524 U.S.
417 (1998), also does not support the panel's approach.  Justice Kennedy explained
that the best mechanism for protecting individual liberty is to adhere to the structure
set out in the Constitution.  Justice Kennedy observed that the "[s]eparation of

11

EXHIBIT 2
89

powers was designed to implement a fundamental insight: Concentration of power in the hands of a single branch is a threat to liberty." *Id.* at 450.  He thus concluded that regardless of its apparently benign purposes, a statute could not "enhance[] the President's powers beyond what the Framers would have endorsed." *Id.* at 451 (Kennedy, J., concurring).  Under the approach articulated by the Supreme Court, courts thus protect individual liberty by preserving (or appropriately limiting) the powers and roles of each Branch—the very issue that the panel majority regarded as not "solely or even primarily" the concern of the Constitution's separation of powers, Op. 58.

Review by the en banc Court therefore is warranted, in view of the importance of the case, the significance of the constitutional question, and the error in the panel's analysis.

4.  In light of the panel's other holdings, however, the en banc Court may properly conclude that it should not reach the separation-of-powers question.  The CFPB has sought rehearing of some aspects of the Court's decision other than the separation-of-powers holding, and this brief takes no position on those issues.  But in the event that the ultimate resolution of those issues results in vacatur of the CFPB's order, this Court may apply the "well-established principle governing the prudent exercise of [courts'] jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the

EXHIBIT 2
90

case." *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009)

(quoting *Escambia Cty. v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam)); *see also Blodgett*

*v. Holden*, 275 U.S. 142, 147-48 (1927) (opinion of Holmes, J.) (explaining that "to

declare an Act of Congress unconstitutional" is "the gravest and most delicate duty

that this Court is called on to perform").

 As Judge Henderson observed, PHH sought only one form of relief in its

petition for review: vacatur of the Board's order against it.  *See, e.g.*, PHH Opening

Br. 61 ("The appropriate remedy for the Director's multiple legal errors is vacatur.").

PHH's briefing focused overwhelmingly on PHH's various statutory (and associated

due process) arguments for vacatur, and it raised the separation-of-powers question

merely as an additional, independent reason for vacating the CFPB's order.  PHH

Opening Br. 21 ("The Decision and Order are invalid for the *independent reason* that the

agency's structure violates the Constitution." (emphasis added)).  The panel held that

the CFPB's order should be vacated on several grounds unrelated to separation of

powers (Op. 70-100), thereby granting PHH "all the relief it seeks," *Northwest Austin*,

557 U.S. at 205; *see also id.* at 205-06 (declining to reach constitutional question where

utility district "describe[d] its constitutional challenge . . . as being 'in the alternative'

to its statutory argument").

 The panel majority reasoned that PHH would obtain relief beyond the vacatur

sought in its papers if its "constitutional *and severability* argument" were accepted.  Op.

EXHIBIT 2

11 n.1 (emphasis added).  There is no uncertainty as to the question of severability, however, that would require the Court to address the merits of the separation-of-powers claim.  Precedents of the Supreme Court and this Court leave no doubt that the remedy for the asserted constitutional violation would be to sever the provision limiting the President's authority to remove the CFPB's Director, not to declare the agency unconstitutional.  *See, e.g.*, *Free Enter. Fund*, 561 U.S. at 508-10; *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1340-41 (D.C. Cir. 2012).

If the case is remanded, and the CFPB continues to pursue action against PHH, petitioners may renew their constitutional challenge.  In the present appeal, this Court may wish to decline to "reach out to make novel or unnecessarily broad pronouncements on [the] constitutional issue[]."  *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 184 (1999).  *See* Op. of Henderson, J., at 8.

14

EXHIBIT 2
92

## CONCLUSION

For the foregoing reasons, the petition should be granted.

Respectfully submitted,

BENJAMIN C. MIZER
*Principal Deputy Assistant Attorney*
*General*

DOUGLAS N. LETTER
MARK B. STERN

*s/ Daniel Tenny*

DANIEL TENNY
TARA S. MORRISSEY
*Attorneys, Appellate Staff*
*Civil Division, Room 7215*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C. 20530*
*(202) 514-1838*

DECEMBER 2016

EXHIBIT 2
93

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2016, I filed and served the foregoing

with the Clerk of the Court by causing a copy to be electronically filed via the

appellate CM/ECF system.  Participants in the case are registered CM/ECF users and

will be served via the CM/ECF system.


*s/ Daniel Tenny*
Daniel Tenny

EXHIBIT 2
94