# Exhibit 10
# to Supplemental Declaration of Alanna B. Carbis in Support of Reply Memorandum of Law in Support of Petition to Enforce Civil Investigative Demand and Request for Judicial Notice

EXHIBIT 10
185

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is by and between the State of North Carolina, on relation of Roy Cooper, Attorney General, Financial Fraud Unit of the Consumer Protection Division (the "Attorney General's Office"), and Future Income Payments, LLC, formerly known as Pensions, Annuities and Settlements, LLC ("FIP"), its Members, Managers, officers, affiliates, and agents. This Agreement is effective as of the date (the "Effective Date") that all of the following conditions are met: Both the Attorney General's Office, or its designee, and FIP (collectively, the "Parties") have executed the Agreement, and each Party has provided the other Party with a signed copy of the Agreement. The Parties enter into this Agreement in order to fully resolve and settle a dispute between the State of North Carolina and FIP related to FIP's business practices in North Carolina.

## RECITALS

WHEREAS, the Attorney General's Office has investigated FIP's business practice of "purchasing income streams," whereby FIP provides a lump-sum cash payment in exchange for monthly payments from existing income streams, and contends that FIP's transactions, up to the present date, constitute the issuance of loans with usurious interest rates in violation of N.C. Gen. Stat. § 24-1 *et seq.*, the North Carolina Consumer Finance Act, N.C. Gen. Stat. § 53-164 *et seq.*, and North Carolina's Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*.

WHEREAS, FIP maintains that it has been and is in the business of conducting transactions that constitute the "purchase of income stream(s)" from North Carolina residents ("Owner(s)") with a lump-sum cash payment ("Purchase Payment") in exchange for the Owner's agreement to transfer to FIP a certain future amount of the specified "income stream" (the "Purchased Asset") that the Owner actually receives, but not in the form of an assignment of any

1

EXHIBIT 10
186

pension right or income stream (each, a "Purchase Transaction"). While the parties do not agree upon the proper characterization of the FIP's North Carolina transactions, for purposes of this Agreement only, the parties will refer to the transactions at issue by utilizing certain terms as they appear in the written agreements between FIP and Owners.

WHEREAS, FIP has entered into a number of Purchase Transactions with Owners;

WHEREAS, FIP considers the Purchase Transactions to be sale transactions that are not subject to North Carolina lending statutes or regulations, including, without limitation, N.C. Gen. Stat. § 24-1 et seq., and N.C. Gen. Stat. § 53-164, et seq., (the North Carolina Consumer Finance Act);

WHEREAS, FIP considers the Purchase Payment to be the purchase price and the Purchased Asset to be the product purchased by FIP;

WHEREAS, the Attorney General's Office considers the transactions to be loans, the Purchase Payments to be "principal" and all periodic payments comprising the Purchased Asset made by the Owner to FIP in excess of the Purchase Payment to be payments of "interest;"

WHEREAS, FIP considers the difference between the Purchase Payment and the Purchased Asset (the "Discount") to be a freely bargained-for discount rate reflecting the present value of the Purchased Asset, and appropriate risk that the Owner will not pay the agreed upon Purchase Payment;

WHEREAS, the Attorney General's Office considers any payments North Carolina consumers are contractually obligated to make to FIP in exchange for the "Purchase Payment" which exceed the amount or cost contemplated in N.C. Gen. Stat. § 24-1 *et seq.* to be usurious interest in violation of N.C. Gen. Stat. § 24-1 *et seq.*, the North Carolina Consumer Finance Act,

N.C. Gen. Stat. § 53-164 *et seq.*, and, based upon North Carolina case law, potentially, North Carolina's Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*

WHEREAS, the Attorney General's Office notified FIP that it considers the Purchase Transactions to be loans, and further communicated an intent to file a Complaint in the North Carolina General Court of Justice for violations of N.C. Gen. Stat. § 24-1 *et seq.*, the North Carolina Consumer Finance Act, N.C. Gen. Stat. § 53-164 *et seq.*, and North Carolina's Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*, seeking to enjoin FIP from engaging in the Purchase Transactions and to obtain other appropriate relief for the Owners, including restitution, civil penalties, the voiding of contracts, attorneys' fees, and costs;

WHEREAS, FIP voluntarily ceased entering into new Purchase Transactions with Owners in North Carolina during the period of time that FIP and the Attorney General's Office were negotiating this Agreement.

WHEREAS, FIP wishes to resume executing Purchase Transactions with Owners after the Effective Date pursuant to the terms and conditions of this Agreement ("Future Transactions");

WHEREAS, any Purchase Transaction executed before the Effective Date that is modified as necessary in accordance with this Agreement is a "Past Transaction."

WHEREAS, there exists a good faith dispute between the Parties as to the statutory, regulatory, and legal characterization of the Purchase Transactions; and

WHEREAS, the Parties desire to resolve the dispute between them without engaging in protracted litigation.

NOW THEREFORE, the Parties have decided to resolve and settle this dispute on the terms, obligations, and consideration exchange agreed below:

## AGREEMENT

1.  Definition of "Agreed Sum." As used in this Agreement, the term "Agreed Sum" shall mean:

    a. For each Past Transaction that had a Purchase Payment to the Owner of $25,000 or less, the amount of the Purchase Payment, plus application of a Discount that, if calculated as interest on an annual basis, equals no more that 16 percent per annum:

    b. For each Past Transaction that had a Purchase Payment of more than $25,000, the amount of the original Purchased Asset.

2.  <u>Release by Attorney General's Office</u>. In consideration for the payments and other matters contained in this Agreement, the Attorney General's Office, on behalf of the State of North Carolina, hereby releases and waives any and all civil claims, liabilities, remedies, and causes of action, (collectively, "Claims"), whether known or unknown, that Attorney General's Office may now have or may have once had against FIP or any of its owners, affiliates, employees, agents, officers, directors, successors, assigns, or heirs ("Releasees") related to any Past Transaction. This release and waiver specifically includes, without limitation, those Claims set forth in the draft complaint the Attorney General's Office provided to FIP in September 2014, alleging violations of N.C. Gen. Stat. § 24-1 *et seq.*, the North Carolina Consumer Finance Act, N.C. Gen. Stat. § 53-164 *et seq.*, and North Carolina's Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* The Agreement shall not affect the rights of any private party to pursue any remedy or remedies allowed pursuant to the laws of the State of North Carolina. This Agreement shall not bind any other offices, boards, commissions, or agencies of the State of North Carolina.

3. <u>Payment by FIP</u>. In consideration for the release and in light of the Attorney General's investigation, disputed transactions, and other matters contained in this Agreement, FIP hereby agrees to tender to the Attorney General's Office $50,000, in five equal monthly payments of $10,000, to offset its costs and attorneys' fees. This payment shall be used by the North Carolina Attorney General for attorneys' fees and other costs of investigation or litigation, placed in or applied to the consumer protection fund, and for consumer protection purposes such as consumer restitution, consumer education, or other uses permitted by law, at the discretion of the Attorney General.

4. <u>Civil Penalty</u>. FIP will pay a civil penalty of $59,900.00 pursuant to N.C. Gen. Stat §75-15.2 to be remitted to the Civil Penalty and Forfeiture Fund.

5. <u>Modification of Past Transactions</u>. For all Past Transactions in which the Purchase Payment is $25,000 or less, FIP agrees that the Purchased Asset will not exceed the Agreed Sum. As necessary with each Owner, FIP will reform any Past Transaction where the total cost to the Owner would, if not modified, exceed the Agreed Sum such that the total cost to the Owner is reduced and will not exceed the Agreed Sum. If, as of the Effective Date, the sum of payments received by FIP toward the Purchased Asset for any Owner already exceeds the Agreed Sum (as calculated over the entire term of each Purchase Transaction), FIP shall refund to the Owner any amounts in excess of the Agreed Sum (the "Refund"). Except as provided in Paragraph 7, the Refund must be mailed or otherwise transferred to the Owner no later than 30 days after the Effective Date.

6. <u>Disclosure by FIP</u>. Prior to the Effective Date, FIP agrees to provide the Attorney General's Office with a spreadsheet containing a true, complete, and accurate list of all Past Transactions (the "List"). The List shall contain the following information for each Past

Transaction: (i) date of the Past Transaction, (ii) the Owner and his or her address and phone number if possessed by FIP, (iii) the Purchase Payment, (iv) the original financial terms of the Past Transactions; (v) the amount of the Purchased Asset under the terms of the Past Transaction, (vi) the modified term during which FIP will accept payments toward the Agreed Sum as reformed pursuant to Paragraph 5; (vii) the Agreed Sum as reformed pursuant to Paragraph 5 and, (viii) the amount, if any, to be refunded to each Owner.

7.  <u>Terms of Future Transactions</u>.  While FIP does not agree or admit that its Purchase Transactions constitute loans, for the purposes of this Agreement, FIP agrees to the Attorney General Office's demand that any Future Purchase Transactions that it enters into with North Carolina residents will comply with N.C. Gen. Stat. § 24-1.1 and, specifically, without limitation, the discount rate and cost of any Future Transaction in North Carolina will not exceed the maximum allowable cost contemplated in N.C. Gen. Stat. § 24-1 *et seq*. (or any modifications or recodifications of the same in effect at the time of the Future Transaction is executed), if the cost of the transaction were calculated using an annual compounding interest rate analysis.

8.  Nothing in this Settlement Agreement shall be construed as relieving FIP of the obligation to comply with all state or federal laws, regulations or rules, or relieving FIP from any existing or future liability under the laws, or from legal claims not set forth in this Agreement.

9.  <u>Application of Additional Payments</u>.  All payments FIP receives after the Effective Date will be applied toward the Agreed Sum, until all such payments comprising the Agreed Sum have been paid in full.

10. <u>Notice to Consumers</u>.  FIP hereby agrees that it will mail written notice (the "Notice"), at its expense, to the last known address of every Owner that entered into a Past

Transaction. The Notice shall inform the Consumers of the terms of Paragraph 5 of this Agreement, shall communicate any related modification, including the sum of the Agreement Amount and the payments that the Owner must make to satisfy said amount, and shall communicate what, if any, Refund the Owner can expect.  Such Notice is attached hereto as Exhibit A.  The Notice shall be mailed no later than 30 days after the Effective Date and a copy of each notice will be provided to the Attorney General's Office. Notwithstanding any other provisions of this Agreement, FIP may elect to mail the Notice and any attendant Refunds at the same time.

11. <u>Monitoring.</u> The Attorney General's Office is authorized to monitor FIP's compliance with this Settlement Agreement by all lawful means and nothing in this Settlement Agreement shall limit a right of the Attorney General's Office to obtain documents, information, or testimony pursuant to any federal or state law, regulation, or rule.

12. <u>No Admission.</u>  Except as otherwise set forth in this Agreement, neither FIP nor the Attorney General's Office, by entering into this Agreement, concedes to any allegation of the other party.  Specifically, the Attorney General's Office does not concede that FIP's North Carolina Transactions are in the nature of purchase transactions, and FIP specifically denies that they are in the nature of loan transactions.  Further, neither party waives objection to any allegations of the other party with respect hereto, nor does either party waive its rights, whether statutory or otherwise, if any, to dispute or contest any of the facts raised herein in any other proceeding. The Parties agree that this Agreement is not a judgment or order of any court, contains no findings of fact, conclusions of law, or admissions.

13. <u>Corporate Structure Change Notification.</u>  FIP shall notify the Attorney General's Office at least thirty (30) days prior to any proposed change in corporate or partnership

structure, or joint venture, such as dissolution, that may affect compliance obligations arising under this Settlement Agreement

14. <u>Effect of Approval.</u> This Agreement shall fully resolve all issues in, or arising out of, the Past Transactions; and shall permit FIP to engage in Future Transactions so long as undertaken in full compliance with the terms of this Agreement and all other applicable laws.

15. <u>Full Resolution.</u> The Parties further agree and acknowledge that this written Agreement sets forth all of the terms and conditions between them concerning the subject matter of this Agreement, superseding all prior oral and written statements and representations, and that there are no terms or conditions between the parties except as specifically set forth in this Agreement.

16. <u>Modification or Waiver.</u> No modification or waiver of any provision of this Agreement shall be effective unless it is in writing. Any modification or waiver must be signed by authorized representatives of the Parties.

17. <u>No Strict Interpretation Against Draftsman.</u> Each Party had the opportunity to review this Agreement and consult with counsel concerning its terms. This Agreement shall not be interpreted strictly against one party on the grounds that it drafted the Agreement.

18. <u>Severability</u>. If any provision of this Agreement is deemed void, unenforceable, or against public policy, the remaining provisions of the Agreement shall remain in full force and effect.

19. <u>Jurisdiction.</u> The Parties agree and stipulate that the Courts of the State of North Carolina have personal jurisdiction over FIP in any dispute over this Settlement Agreement and subject matter jurisdiction to enforce this Settlement Agreement and to issue any orders or

directions as may be necessary and appropriate for the enforcement of, or compliance with, this Settlement Agreement

20. <u>Expenses.</u> Except as set forth in this Agreement, the Parties agree that each party shall bear its own expenses and that no claim for such costs or expenses shall be made by one party against the other.

21. <u>Authority to Settle.</u> The undersigned represent and warrant that they are authorized to enter into this Agreement on behalf of the Parties to this Agreement.

22. <u>Governing Law.</u> This Agreement shall be construed and governed according to the laws of the State of North Carolina. If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall continue in full force and effect.

IN WITNESS WHEREOF, the Parties have executed duplicate original copies of this Agreement, with one original copy being retained by each party.

**FUTURE INCOME PAYMENTS, INC.**

By: _____/s/ Scott Kohn_____          _6/6/16_
      Scott Kohn, President                     Date

10

EXHIBIT 10
195

**CONSUMER PROTECTION DIVISION**

By: _William V. Conley_           6/14/2016
William V. Conley,
Special Deputy Attorney General       Date