# Exhibit 12
# to Supplemental Declaration of Alanna B. Carbis in Support of Reply Memorandum of Law in Support of Petition to Enforce Civil Investigative Demand and Request for Judicial Notice

EXHIBIT 12
214

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN DOE COMPANY,           )
                            )
    *Plaintiff,*          )
                            )
    v.                    )    Civil Action No. _____
                            )
CONSUMER FINANCIAL PROTECTION )
BUREAU *et al.*,            )
                            )
    *Defendants.*         )
_____)

## MEMORANDUM SUPPORTING PLAINTIFF'S MOTION FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff[1] submits this statement of points and authorities in support of its Motion for Temporary Restraining Order and Preliminary Injunction.

### SUMMARY OF ARGUMENT

The "Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 480 (2010) (quoting *Bowsher v. Synar*, 478 U.S. 714, 730 (1986)). The core structural safeguard is the separation of powers, which operates as "a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict." *Landry v. FDIC*, 204 F.3d 1125, 1131 (D.C. Cir. 2000) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 239 (1995)). This

---

[1] Plaintiff has filed a motion to proceed under pseudonym explaining why it should be permitted to remain anonymous. In short, Plaintiff's privacy interest outweighs the public's interest in knowing Plaintiff's identity. The constitutional arguments Plaintiff raises here do not require discussion of Plaintiff's individual circumstances or characteristics.

EXHIBIT 12
215

is an action to prevent the Consumer Financial Protection Bureau and its Director (the "Director") (collectively, the "Bureau" or "CFPB") from eroding those structural protections.

The D.C. Circuit recently "conclude[d] that the CFPB is unconstitutionally structured because it is an independent agency headed by a single Director." *PHH Corp. v. CFPB*, 839 F.3d 1, 36 (D.C. Cir. 2016). Rather than striking down the Bureau or the entire Dodd–Frank Act of 2010, the Court of Appeals fashioned a "narrower remedy for the CFPB's constitutional flaw" that would allow the Bureau to continue functioning: it severed the for-cause removal provision insulating the Director from executive supervision. *Id.* at 37–39. The Bureau is now seeking en banc review of the D.C. Circuit's narrow remedy. While this pursuit is lawful and appropriate, it also preserves the Bureau's unconstitutional structure because it prevents the mandate from issuing.

In the weeks since the *PHH Corp.* decision issued, the Bureau pursued an investigation of Plaintiff and served Plaintiff with a civil investigative demand. In December 2016, Plaintiff asked the Bureau to withdraw that demand because the Bureau issued it while unconstitutionally structured. Plaintiff also requested confidential treatment because publication of the Bureau's investigation would cause irreparable harm to Plaintiff's business and its accumulated good will.

On January 6, 2017, the Bureau notified Plaintiff by email that it had denied Plaintiff's petition to modify or set aside the CID and request for confidential treatment. The Bureau also stated that it intends to publicize Plaintiff's petition and the Director's Order in response thereto on or after Friday, January 13, 2016. This announcement will further infringe Plaintiff's liberty and devastate its business. The Director is currently "the single most powerful official in the entire U.S. Government, other than the President." *Id.* at 17. And the Bureau has cultivated and intentionally fostered a reputation for aggressive investigation and enforcement efforts that

2

EXHIBIT 12

216

cripple and kill all but the largest and most robust businesses.  The Bureau's decisions are publicly reported and widely read, and investors and participants in industries that the Bureau believes it regulates are necessarily vigilant about such determinations.  To a near certainty, and without regard to the propriety of the Bureau action or the merit of its investigation or any enforcement action, this announcement will cause the individuals and entities with whom Plaintiff contracts, and without whom Plaintiff cannot operate, to sever their relationships with Plaintiff.

Plaintiff respectfully requests that this Court issue a temporary restraining order to maintain the status quo by preventing the Bureau from announcing its investigation of Plaintiff or otherwise taking any action adverse to Plaintiff in the next 14 days.  This restraint is necessary because the Bureau's announcement is imminent, and because the Bureau can effectively moot this case by initiating a public enforcement action against Plaintiff in a different federal court—a tactic that the Bureau has employed before when served with a complaint for injunctive relief in this Court.  *See Morgan Drexen, Inc. v. CFPB*, 979 F. Supp. 2d 104, 109 (D.D.C. 2013) (filed July 22, 2013); *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082 (C.D. Cal. 2014) (filed Aug. 20, 2013).

## FACTUAL BACKGROUND

This action arises from three parallel developments: (1) the D.C. Circuit's recent decision that the Bureau's structure violates the separation of powers; (2) the Bureau's continuing—and thus far effective—efforts to preserve that structure; and (3) the Bureau's decisions to pursue an investigation into Plaintiff's business, to demand involuntary production of documents and information, and to publicize Plaintiff's request that the investigation remain confidential, all while operating under the structure that the D.C. Circuit found unconstitutional.

## I. The Bureau's Unconstitutional Structure

The Bureau is an unaccountable agency that wields massive legislative, executive, and judicial power. It is unaccountable because it is headed by a single director who serves a five-year term and is removable only for cause, and because the Bureau has the power to fund itself from the Federal Reserve System's operating expenses. This independence is problematic because the Bureau has broad authority "to prescribe rules or issue orders or guidelines pursuant to any Federal consumer financial law," 12 U.S.C. § 5581(a)(1)(A), previously held by "the Board of Governors (and any Federal reserve bank, as the context requires), the Federal Deposit Insurance Corporation, the Federal Trade Commission, the National Credit Union Administration, the Office of the Comptroller of the Currency, the Office of Thrift Supervision, and the Department of Housing and Urban Development, and the heads of those agencies," *id.* § 5581(a)(2)(A).

The Bureau has vast investigatory and enforcement powers. It can "conduct hearings and adjudication proceedings," *id.* § 5563(a), and "issue subpoenas for the attendance and testimony of witnesses and the production of relevant papers, books, documents, or other material in connection with hearings," *id.* § 5562(b)(1). In fact, the Bureau can issue a civil investigative demand to "any person" requiring that person to produce documents for inspection, file written reports or answers to questions, and give oral testimony as long as the Director "has reason to believe" that the person "may be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to a violation." *Id.* § 5562(c)(1).

While the Bureau's investigative demands are not self-enforcing—it must petition a federal district court to compel compliance—the Bureau is "accorded 'extreme breadth in conducting [its] investigations.'" *United States v. Capitol Supply, Inc.*, 27 F. Supp. 3d 91, 99 (D.D.C. 2014) (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust*

*Corp.*, 5 F.3d 1508, 1517 (D.C. Cir. 1993)). The courts' only role is to determine "whether 'the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'" *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)).

The Bureau also has the power to pursue a broad range of legal and equitable relief, including "rescission or reformation of contracts," "refund of moneys or return of real property," "restitution," "disgorgement or compensation for unjust enrichment," "payment of damages or other monetary relief," "public notification regarding the violation, including the costs of notification," "limits on the activities or functions of the person," and "civil money penalties." 12 U.S.C. § 5565(a)(2). The Bureau can pursue this relief by filing suit in "a United States district court or in any court of competent jurisdiction of a state in a district in which the defendant is located or resides or is doing business," *id.* § 5564(f), or by conducting its own "adjudication proceedings" subject to deferential Administrative Procedure Act review, *id.* § 5563(a); *see also id.* § 5563(b)(4).

The Bureau wields all of these powers free from supervision by Congress or the President. Congress does not supervise the Bureau because the Director sets the Bureau's own budget, up to 12 percent of the total operating expenses of the Federal Reserve System, and can demand that sum from the Board of Governors. *See id.* § 5497(a). The Committees on Appropriations of the House of Representatives and the Senate are prohibited from reviewing these funding decisions. *Id.* § 5497(a)(2)(C). Similarly, the President cannot supervise the Bureau because the Director serves a five-year term, *id.* § 5491(c)(1), and he or she is removable by the President only "for inefficiency, neglect of duty, or malfeasance in office," *id.* § 5491(c)(3).

In short, the Bureau has the unilateral power to enact regulations with the force of law, to police compliance with those regulations, and to adjudicate enforcement actions and impose sanctions on those it decides have violated those regulations—all free from congressional or presidential supervision

The Court of Appeals for the District of Columbia Circuit has recognized that these powers are unconstitutional when held by a single, unaccountable director. On October 11, 2016, the D.C. Circuit "conclude[d] that the CFPB is unconstitutionally structured because it is an independent agency headed by a single Director." *PHH Corp. v. CFPB*, 839 F.3d 1, 36 (D.C. Cir. 2016). Despite this unconstitutional structure, the Court of Appeals did not enjoin all further action by the Bureau. Rather, the D.C. Circuit held that the Bureau could continue to function if the President of the United States had "the power to remove the Director at will, and to supervise and direct the Director." *Id.* at 8. The Court of Appeals determined that it could impose this constitutional fix and ordered that it be put into effect "by severing the for-cause removal provision from [12 U.S.C. § 5491(c)(3)]." *Id.*

## II.     The Bureau Delays Issuance of the Mandate

The Bureau is preventing the D.C. Circuit from implementing its constitutional remedy. When the Court of Appeals issued its opinion in *PHH Corp.*, the Clerk of Court issued an Order "withhold[ing] issuance of the mandate herein until seven days after disposition of any timely petition for rehearing or petition for rehearing en banc." (Oct. 11, 2016, Order, Doc. No. 1640102 (attached to Plaintiff's Complaint as Exhibit A) (citing Fed. R. App. P. 41(b); D.C. Cir. Rule 41).) The Clerk also clarified that the Order was "without prejudice to the right of any party to move for expedited issuance of the mandate for good cause shown." (*Id.*) Rather than seeking immediate issuance of the mandate, the Bureau filed a petition for rehearing en banc.

(*See* Bureau's Pet. Reh'g En Banc, Doc. No. 1646917 (attached to Plaintiff's Complaint as Exhibit B).)

The Bureau's petition is currently pending before the D.C. Circuit. If the Court of Appeals were to grant the Bureau's petition, issuance of the mandate would be "further postponed until final resolution of the rehearing." 16AA Catherine T. Struve, *Federal Practice & Procedure* § 3987 (4th ed. 2016). Finally, any party seeking certiorari from the Supreme Court could move to stay the mandate pending the filing and resolution of its petition. *See* Fed. R. App. P. 41(d)(2).

In short, the Bureau would be subject to checks and balances almost immediately if it were to withdraw its petition for rehearing. While the Bureau unquestionably has the right to seek further review of the *PHH Corp.* decision, its exercise of that right comes at a cost: delay of the constitutional remedy. This delay would not be problematic if the Bureau stayed its investigatory, enforcement, and rulemaking activities while the Court of Appeals considered the Bureau's petition. But the Bureau has instead chosen to preserve its unconstitutional structure while at the same time continuing to wield the broad executive, legislative, and judicial authority that the D.C. Circuit has held exceeds the permissible bounds of powers that may be held by a single, unaccountable director. This choice exemplifies precisely the combination of unchecked power and behavior that the separation of powers is intended to prevent.

## III.   The Bureau Begins Targeting Plaintiff

On November 23, 2016—more than a month after the D.C. Circuit found that the Bureau is unconstitutionally structured—the Bureau served a Civil Investigative Demand on Plaintiff (the "CID") (attached to Plaintiff's Complaint as Exhibit D). (Compl. ¶ 53.) The CID contains a notification of purpose that bears no reasonable relation to Plaintiff's business.

Plaintiff is in the business of purchasing and selling the right to certain income streams. (Compl. ¶ 15.) Plaintiff purchases these streams from individuals who are entitled to receive periodic payments from a pension or similar source and who wish to sell a portion of the income stream derived from those payments. (Compl. ¶ 16.) Plaintiff purchases the income streams at a discount, which reflects both the time value of money and the risk of non-payment. (*Id.*) The existence and specific size of that discount are clearly and conspicuously communicated to the seller. (*Id.*) Plaintiff also sells income streams to individuals who wish to buy the right to receive a monthly income stream for a fixed period, usually five or ten years. (Compl. ¶ 17.)

The CID, which was served privately, purports to require Plaintiff to respond to nine interrogatories, to file two written reports, and to produce ten categories of documents. (Compl. ¶ 54.) Complying with these demands for production of essentially every business and financial record ever generated by Plaintiff, as well as disclosure of every person or entity Plaintiff has done business with, would be oppressive, expensive, time-consuming, and exceptionally disruptive to Plaintiff's business. (*Id.*)

On December 8, 2016, Plaintiff met and conferred with the Bureau by telephone and asked the Bureau to withdraw the CID. (Compl. ¶ 55.) The Bureau refused that request. (*Id.*)

Five days later, on December 13, Plaintiff appealed to the Director by filing a petition to set aside or modify the CID. (Compl. ¶ 56); *see also* 12 C.F.R. § 1080.6(e) (providing the recipient of a CID the right to file such a petition). Plaintiff urged the Director to withdraw the CID because, among other reasons, the "Court of Appeals has temporarily stayed the issuance of its mandate" in *PHH Corp.* and therefore the "CID has no constitutional basis." (Pl.'s Pet. Set Aside or Modify CID at 4 (attached to Plaintiff's Complaint as Exhibit E).) Plaintiff also asked

the Director not to publish Plaintiff's petition, as publishing the details of the CID and Plaintiff's request to revoke that CID would forever harm Plaintiff's business. (Compl. ¶ 56.)

On Friday, January 6, 2017, the Bureau notified Plaintiff by email that the Director had denied Plaintiff's petition to modify or set aside the CID and request for confidential treatment. (*See* Email from Bureau to Plaintiff (Jan. 6, 2017) (attached to Plaintiff's Complaint as Exhibit F).) In that Decision and Order, dated January 5, 2017, the Director dismissed Plaintiff's constitutional objection to the Bureau's authority on the ground that Plaintiff's "constitutional challenge is not properly raised in this administrative proceeding . . . because 'government agencies may not entertain a constitutional challenge to authorizing statutes.'" (Director's Decision & Order at 2 (attached to Plaintiff's Complaint as Exhibit G) (quoting *United Space All., LLC v. Solis*, 824 F. Supp. 2d 68, 97 n.10 (D.D.C. 2011)).)

Finding that Plaintiff had not presented a sufficient basis to revoke or set aside the CID, the Director ordered Plaintiff "to produce all responsive documents, items, and information within its possession, custody, or control that are covered by the CID, within 10 calendar days of [the] Decision and Order [i.e., by January 15, 2017]." (*Id.* at 6.) With respect to Plaintiff's request for confidential treatment, the Director determined that Plaintiff "has not shown good cause for non-public treatment of the CID, its Petition, and [the Director's] Order." (*Id.* at 5.)

The Bureau further stated in its January 6, 2017, email to Plaintiff that the Director's "Decision and Order along with the Petition will be available to the public on the Bureau's website on or after January 13, 2016 [sic]."[2] (Email from Bureau to Plaintiff.) This notice from the Director fundamentally and permanently changes the posture of the investigation and action

---

[2] Plaintiff understands the Bureau to mean that the documents will be published on or after Friday, January 13, 2017.

by the Bureau, and it gives rise to Plaintiff's immediate need for injunctive relief. Moreover, Plaintiff will not accede to the Director's unconstitutional demands by producing materials in response to the CID. Accordingly, the Bureau is substantially certain to initiate some kind of enforcement action against Plaintiff. While Plaintiff is confident that it would ultimately prevail in any such action—Plaintiff acts lawfully and is not subject to the Bureau's jurisdiction—it has a constitutionally protected liberty interest in ensuring that the Bureau is subject to checks and balances when exercising its enormous and far-reaching powers.

## ARGUMENT

There is a brief window after the Court of Appeals has issued its judgment and before the mandate has issued in which the Court has made its decision but the judgment has not yet gone into effect. Here, the Bureau has taken actions during that window that, if not enjoined, will continue violating Plaintiff's constitutional rights and will impose irreparable harm on Plaintiff's business. The Bureau's issuance of the CID and continuation of its investigation are unlawful because the D.C. Circuit has determined that the powers vested in the Bureau—the same powers that it is now using against Plaintiff—violate the U.S. Constitution. The Court should prevent the Bureau from using those powers to restrict Plaintiff's liberty or otherwise cause Plaintiff irreparable harm while the legality of those powers is, at the very least, in grave constitutional doubt.

Issuing a temporary restraining order and preliminary injunction will preserve the status quo while this Court considers Plaintiff's separation-of-powers challenge to the Bureau's authority. This Court should grant that relief because (1) Plaintiff "is likely to succeed on the merits"; (2) Plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [Plaintiff's] favor"; and (4) "an injunction is in the public

interest." *Gerber Prod. Co. v. Vilsack*, No. 16-CV-01696 (APM), 2016 WL 4734357, at \*3 (D.D.C. Sept. 9, 2016) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

These "four factors have typically been evaluated on a 'sliding scale,'" such that "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Catharsis on the Mall, LLC v. Jewell*, No. 16-CV-2231 (CKK), 2016 WL 6678343, at \*3 (D.D.C. Nov. 11, 2016) (alteration in original) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)).[3]

As explained below, Plaintiff makes an unusually strong showing that it will prevail on the constitutional merits and a sufficient showing under the remaining three factors. This Court should therefore enjoin the Bureau from taking any regulatory, adjudicative, or enforcement action adverse to Plaintiff until the Court can reach the merits of Plaintiff's claims. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (noting that "injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally").

## I.    Plaintiff is Likely to Succeed on the Merits

### a.    The Bureau Is Unconstitutionally Structured

Plaintiff makes an extraordinary showing that it is likely to succeed on the merits because it presents an argument that the D.C. Circuit just accepted in a precedential opinion after extensive analysis. Plaintiff claims that "the CFPB is unconstitutionally structured because it is

---

[3] The D.C. Circuit has recently "hinted on several occasions that 'a likelihood of success is an independent, freestanding requirement for a preliminary injunction.'" *Nat'l Ass'n for Fixed Annuities v. Perez*, No. 16-CV-1035 (RDM), 2016 WL 6902113, at \*1 (D.D.C. Nov. 23, 2016) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011)); *see also Davis v. Pension Ben. Guar. Corp.*, 571 F.3d at 1296 (Kavanaugh, J., concurring) (observing that, "under the Supreme Court's precedents, a movant cannot obtain a preliminary injunction without showing *both* a likelihood of success *and* a likelihood of irreparable harm, among other things"). This Court need not decide whether the sliding-scale approach remains viable because Plaintiff makes a strong showing under all four factors.

an independent agency headed by a single Director." *PHH Corp.*, 839 F.3d at 36. It argues that Congress has made the Director "the single most powerful official in the entire U.S. Government, other than the President," by giving him broad authority to interpret and enforce consumer protection law without imposing any meaningful check on his exercise of that authority. *Id.* at 17. This accumulation of power in the hands of a single, unelected, and unaccountable director "departs from settled historical practice regarding the structure of independent agencies" and "that departure makes a significant difference for the individual liberty protected by the Constitution's separation of powers." *Id.* at 36.

A precedential decision, the *PHH Corp.* Court's judgment will be the law of this Circuit unless the en banc D.C. Circuit or the Supreme Court (1) agrees to rehear or review that judgment and (2) reverses or vacates it. Both of these contingencies are highly speculative, particularly when considered against Judge Kavanaugh's compelling and thorough examination of Supreme Court precedent and historical practice. A litigant seeking injunctive relief would be hard pressed to present a more persuasive case that he or she will succeed on the merits.

### i. The Potential for En Banc Rehearing or Certiorari Review Does Not Undermine Plaintiff's Likelihood of Success on the Merits

Plaintiff's likelihood of success on the merits does not depend on the Court of Appeals denying rehearing en banc or the Supreme Court denying any petition for certiorari. As an initial matter, those discretionary (and hypothetical) decisions would in no way indicate that the Bureau is constitutionally structured. En banc rehearing and certiorari review are both appropriate where "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a)(2); *see also* U.S. Sup. Ct. R. 10(c) (noting that the "compelling reasons" justifying certiorari review include that a "United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court"). The *PHH Corp.* decision is undoubtedly

important. The Bureau writes that it "may be the most important separation-of-powers case in a generation." (Bureau's Pet. Reh'g En Banc at 1.) While that characterization is likely an overstatement, it highlights a reason why the D.C. Circuit and Supreme Court may choose to hear *PHH Corp.* other than disagreement with the panel's decision.

Moreover, even if further review could be read as signaling disapproval of the panel's reasoning, that disapproval would not necessarily favor the Bureau. The D.C. Circuit and Supreme Court may overrule the panel's decision to "narrowly strike down and sever the one for-cause removal provision that is the source of the constitutional problem" rather than "strike down that whole [Dodd–Frank] Act" or "at least those statutory provisions creating the CFPB and defining the CFPB's duties and authorities." *PHH Corp.*, 839 F.3d at 37. There is reason to adopt one of these broader approaches. Most notably, "current and former members of Congress who are familiar . . . with the critical role that the [Bureau] plays in the legislative plan that Congress put in place when it enacted Dodd-Frank" have expressed their view that "the panel decision fundamentally altered the CFPB's structure in a way that is at odds with Congress's design and will undermine the CFPB's ability to fulfill its important role under Dodd-Frank." Br. Current & Former Members Congress Supp. Reh'g, 2016 WL 6994388, at *1, *5 (Nov. 29, 2016). While those current and former members wrote in support of their claim that the Bureau is currently constitutionally structured, their reasoning casts doubt on whether "the legislature [would] have preferred what is left of its statute to no statute at all." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006). Congress intended to create a self-funded independent agency, not a self-funded executive agency. *Cf.* 12 U.S.C. § 5497(a)(2) (authorizing the Bureau to determine its own funding and prohibiting congressional review of that funding decision).

In any event, Judge Kavanaugh's reasoning in *PHH Corp.* is persuasive regardless of whether it is legally binding on this Court. Judge Kavanaugh carefully and exhaustively describes the background of independent agencies in general and the Bureau in particular, explains why the Bureau is a historical anomaly, highlights the reasons why the Bureau's departure from historical practice threatens individual liberty, and addresses potential counterarguments. *PHH Corp.*, 839 F.3d at 12–36. At the very least, this analysis represents the considered judgment of two D.C. Circuit Judges formed after extensive briefing and oral argument. And it demonstrates why Plaintiff is at least likely to succeed on its claim that "the CFPB is unconstitutionally structured because it is an independent agency headed by a single Director." *Id.* at 37.

### ii. The *PHH Corp.* Mandate Has Not Yet Issued

The *PHH Corp.* Court's constitutional remedy has not yet gone into effect. The Court of Appeals' docket reveals that no mandate has issued. (*See* D.C. Circuit Docket No. 15-1177 (last updated Jan. 9, 2017) (attached to Plaintiff's Complaint as Exhibit C).) The absence of a mandate is critical because the Federal Rules of Appellate Procedure make clear that a court of appeals' "mandate is effective when issued." Fed. R. App. P. 41(c). The Advisory Committee Notes accompanying Rule 41(c) explain that the appellate court's "judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed." Fed. R. App. P. 41, 1998 Adv. Comm. Note.[4] Indeed, the purpose of the Bureau's petition for rehearing en banc is to prevent that mandate from going into effect.

_____

[4] *Accord Nat. Res. Def. Council, Inc. v. Cty. of Los Angeles*, 725 F.3d 1194, 1203 (9th Cir. 2013) ("No opinion of this circuit becomes final until the mandate issues[.]" (alteration in original) (quoting *Carver v. Lehman*, 558 F.3d 869, 878 (9th Cir. 2009))); *Mason v. Mitchell*, 729 F.3d 545, 551 (6th Cir. 2013) ("When the mandate issued, this court's writ became effective and the

It is no answer to say that the lack of a mandate means that the Bureau is currently constitutionally structured. The *PHH Corp.* decision has two relevant parts: (1) analysis of the Bureau's current structure and explanation of why that structure violates the Constitution; and (2) a remedy for that constitutional violation. The first holding has no operative effect; it merely describes the current structure and explains why some remedy is necessary. *See PHH Corp.*, 839 F.3d at 37 ("Having concluded that the CFPB is unconstitutionally structured because it is an independent agency headed by a single Director, we must decide on the appropriate remedy."). The remedy is the operative part of the panel's holding, the portion of the opinion that alters the Bureau's current structure. Unless and until that mandate goes into effect, the Bureau continues to wield the same unchecked executive, legislative, and judicial powers that Judge Kavanaugh found violate the constitution. This violation exists regardless of whether a court has formally and finally recognized it. The constitutional remedy, on the other hand, is not yet effective. Indeed, counsel for the Bureau is substantially certain to concede that the President currently lacks the power to remove the Director for any reason other than "inefficiency, neglect of duty, or malfeasance in office." 12 U.S.C. § 5491(c)(3).

### b. Plaintiff Can Bring this Challenge Now

Plaintiff has standing to bring its structural challenge and that challenge is ripe for review. A "regulated party [can] challenge the constitutionality of the Bureau . . . in a stand-alone constitutional challenge as in *Free Enterprise Fund.*" *PHH Corp.*, 839 F.3d at 59 n.4 (Henderson, J., concurring in part and dissenting in part). In *Free Enterprise Fund v. Public*

judgment became final."); *Busk v. Integrity Staffing Sols., Inc.*, 797 F.3d 756, 757 (9th Cir. 2015) (noting that "the Clerk of Court issued the mandate on June 12, 2013, giving effect to the judgment"); *Young v. United Parcel Serv., Inc.*, No. 11-2078, 2015 WL 2058940, at *1 (4th Cir. Apr. 28, 2015) ("This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41.").

*Company Accounting Oversight Board*, the Supreme Court held that the Sarbanes-Oxley Act's dual for-cause limitations on removal of members of the Public Company Accounting Oversight Board contravened the Constitution's separation of powers. 561 U.S. 477, 487 (2010). As here, that challenge arose after the agency "began a formal investigation" and the investigated party "sued the Board and its members, seeking (among other things) a declaratory judgment that the Board is unconstitutional and an injunction preventing the Board from exercising its powers." *Id.* The District, Circuit, and Supreme Courts all found that the federal courts had jurisdiction over the plaintiff's separation-of-powers challenge. *See id.*; 537 F.3d 667, 671 (D.C. Cir. 2008); No. CIVA 06-0217 JR, 2007 WL 891675, at \*3 (D.D.C. Mar. 21, 2007).

Plaintiff has standing because, as the D.C. Circuit has held, "litigants have standing to challenge the authority of an agency on separation-of-powers grounds . . . where they are directly subject to the authority of the agency, whether such authority is regulatory, administrative, or adjudicative in nature." *Comm. for Monetary Reform v. Bd. of Governors of Fed. Reserve Sys.*, 766 F.2d 538, 543 (D.C. Cir. 1985). Plaintiff is currently under investigation by the Bureau, the Director has demanded that Plaintiff produce voluminous records that are burdensome to collect and create, and the Bureau has decided to publicize Plaintiff's opposition to that demand. Because Plaintiff is directly subject to the Bureau's authority, it has standing to challenge the agency's constitutionality on separation-of-powers grounds. *See State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) ("There is no doubt that the [plaintiff] is regulated by the Bureau. Under *Lujan* [*v. Defenders of Wildlife*, 504 U.S. 555 (1992)], the [plaintiff] therefore has standing to challenge the constitutionality of the CFPB.").

Plaintiff's challenge to the Bureau's constitutionality is also ripe. "[T]he doctrine of separation of powers is a *structural safeguard* rather than a remedy to be applied only when

specific harm, or risk of specific harm, can be identified." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 239 (1995). Plaintiff does not have to challenge the Bureau's CID with noncompliance and await an enforcement action in order to seek the protection of that structural safeguard. Rather, "the Supreme Court [has] ruled that affected parties could challenge agency regulations in pre-enforcement suits" because "regulated parties generally need not violate a law in order to challenge the law." *Lew*, 795 F.3d at 54 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 152–53 (1977)). Importantly, this rule applies where, as here, the plaintiff is "challenging the legality of the regulating agency itself" because "it would make little sense to force a regulated entity to violate a law (and thereby trigger an enforcement action against it) simply so that the regulated entity can challenge the constitutionality of the regulating agency." *Id.*; *cf. PHH Corp.*, 839 F.3d at 36 ("[T]he probability of judicial review of some agency action has never excused or mitigated an otherwise extant Article II problem in the structure of the agency.").

## II. Plaintiff Will Suffer Irreparable Harm Absent an Injunction

Injunctive relief is warranted here because the Constitution guarantees checks and balances on the exercise of governmental power. The Bureau's current structure is inconsistent with constitutionally protected liberty, and the Bureau will soon cause irreparable harm to Plaintiff's reputation and business, most notably by publicizing its investigation of Plaintiff on or after January 13, 2017. Moreover, there is precedent for the Bureau aggressively acting to moot suits like this by filing an enforcement action in a different federal court, thereby inflicting the harm that this lawsuit seeks to prevent. As Plaintiff explains below, this Court should maintain the status quo so that it can consider the merits of Plaintiff's constitutional claim.

### a. The Bureau is Causing Plaintiff Irreparable Harm by Violating the Constitution

The Bureau's unconstitutional structure imposes irreparable harm on Plaintiff. This is true regardless of whether Plaintiff can identify any specific injury flowing from that unconstitutional structure. The separation of powers is not a "remedy to be applied only when specific harm, or risk of specific harm, can be identified." *Landry v. FDIC*, 204 F.3d 1125, 1131 (D.C. Cir. 2000) (quoting *Plaut*, 514 U.S. at 239). Rather, a structural constitutional violation is "subject to automatic reversal." *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)); *accord State Nat'l Bank of Big Spring v. Lew*, No. 12-CV-1032 (ESH), 2016 WL 3812637, at \*4 (D.D.C. July 12, 2016) ("It is true that *Landry v. FDIC* stated that Appointments Clause violations create a structural error that, even absent a showing of prejudice, make the invalid appointee's actions 'subject to automatic reversal.'"); *cf. Noel Canning v. NLRB*, 705 F.3d 490, 493, 514 (D.C. Cir. 2013) (agreeing with the petitioner that the NLRB's "order under review is void *ab initio*" because "the Board lacked authority to act for want of a quorum"). The D.C. Circuit has explained that this automatic-reversal rule is appropriate because "it will often be difficult or impossible for someone subject to a wrongly designed scheme to show that the design—the structure—played a causal role in his loss." *Landry*, 204 F.3d at 1131. Thus, Plaintiff need not show that the Bureau's conduct adverse to Plaintiff is the product of the Bureau's unconstitutional structure. Rather, Plaintiff's burden is to show that the Bureau is violating the separation of powers and that Plaintiff is subject to the Bureau's unconstitutional authority. *See Comm. for Monetary Reform*, 766 F.2d at 543.

Moreover, the Bureau's unconstitutional structure injures Plaintiff's liberty. "[T]he Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S.

477, 480 (2010) (quoting *Bowsher v. Synar*, 478 U.S. 714, 730 (1986)).[5]  The Bureau's encroachment on these separations "departs from settled historical practice regarding the structure of independent agencies" and "that departure makes a significant difference for the individual liberty protected by the Constitution's separation of powers." *PHH Corp.*, 839 F.3d at 36.

"It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *accord* 11A Mary Kay Kane, *Federal Practice & Procedure* § 2948.1 (3d ed. 2016) ("When an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary."). Here, the Bureau is currently making decisions that directly affect Plaintiff's constitutionally protected liberty.  Its issuance of the CID injured Plaintiff's liberty by forcing Plaintiff to either comply with the CID or oppose it, both time-consuming and expensive propositions.  And, absent the relief sought by this Motion, it will soon decide whether to initiate an enforcement action against Plaintiff.  As Judge Kavanaugh explained in *PHH Corp.*, these "discretionary actions have a critical impact on individual liberty." 839 F.3d at 35.

---

[5] *See also, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 483 (2011) ("Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others. Yet the dynamic between and among the branches is not the only object of the Constitution's concern. The structural principles secured by the separation of powers protect the individual as well." (quoting *Bond v. United States*, 564 U.S. 211, 222 (2011))); *Boumediene v. Bush*, 553 U.S. 723, 742 (2008) ("The Framers' inherent distrust of governmental power was the driving force behind the constitutional plan that allocated powers among three independent branches. This design serves not only to make Government accountable but also to secure individual liberty."); *Bowsher*, 478 U.S. at 722 ("Even a cursory examination of the Constitution reveals the influence of Montesquieu's thesis that checks and balances were the foundation of a structure of government that would protect liberty.").

Judge Leon's analysis of irreparable harm in *Klayman v. Obama* exemplifies the appropriate analysis where, as here, the plaintiff has shown a substantial likelihood of success on the constitutional merits. 142 F. Supp. 3d 172 (D.D.C. 2015). Judge Leon held that "plaintiffs ha[d] adequately demonstrated irreparable injury" because they showed that they were "substantially likely to succeed on their claim that the Government is actively violating the rights guaranteed to them by the Fourth Amendment." *Id.* at 195. No further analysis was necessary. So too here: the ongoing constitutional violation establishes irreparable harm.

### b. Only Injunctive Relief Will Prevent the Bureau from Depriving Plaintiff of Its Liberty by Filing an Enforcement Action in a Different Court

The decision whether to "bring law enforcement actions" is "the core of the executive power and the primary threat to individual liberty posed by executive power." *PHH Corp.*, 839 F.3d at 19; *see also id.* at 26 ("Before [a multi-member independent] agency can infringe your liberty in some way—for example, *initiating an enforcement action against you* or issuing a rule that affects your liberty or property—a majority of commissioners must agree." (emphasis added)). Plaintiff has the constitutional right to have a person clearly subject to checks and balances make that critical decision. Yet the Bureau has already shown that it is willing to file an enforcement action in a different federal court while a separation-of-powers claim is pending against it in the District of Columbia. This Court should prevent the Bureau from repeating that maneuver.

In *Morgan Drexen, Inc. v. CFPB*, 979 F. Supp. 2d 104 (D.D.C. 2013), the plaintiff was under investigation by the Bureau and filed a complaint in this Court seeking to enjoin that investigation because, among other reasons, the Bureau was unconstitutionally structured. On July 22, 2013, the same day that it filed the complaint, the plaintiff sought a preliminary

injunction preventing the Bureau from taking further action until the plaintiff's constitutional claims could be heard.

On July 24, 2013, Judge Kollar-Kotelly held a telephone conference with the parties and proposed "roll[ing] the preliminary injunction into a decision on the merits" after "briefing on the merits with an expedited schedule" and "an expedited decision." (Hr'g Tr. 3:12–15, July 24, 2013 (attached as Exhibit 1).) Both counsel agreed to confer with their clients and revisit the issue the following day. The next day, the parties accepted that proposal. During that conversation, the Court and counsel for the Bureau had the following exchange regarding the filing of an enforcement action:

> THE COURT: . . . Can I make an assumption that from the defendant's perspective, since you indicate that [the Bureau's Civil Investigative Demands] were not self-enforcing, *that during this period of time you would not be filing an enforcement action*?
>
> MR. COLEMAN: Your Honor, that determination is not mine to make.
>
> THE COURT: Okay.
>
> MR. COLEMAN: I don't know the answer to that.
>
> THE COURT: It would be helpful to obviously have some sense of whether you're doing it in terms of the context of how long a period of time. I indicated that this would be an expedited schedule and I would make an expedited decision. *It would be helpful, probably, not to have an enforcement action, which they're claiming is unconstitutional, going on at the same time*. That was my question.
>
> MR. COLEMAN: Your Honor, I understand your concern. And as the record already demonstrates, we have suggested to the plaintiff in this matter, the defendant, an enforcement action, and we didn't think that they were in violation of the law. We have not yet determined whether or not to file an enforcement action, and I can't commit to what we will do in that regard during the course of our briefing here.
>
> THE COURT: Okay. All right. Well, whenever you make a decision about it, it would be helpful if you let the Court know.
>
> MR. COLEMAN: Of course, Your Honor . . . .

(Hr'g Tr. 5:10–6:11, July 25, 2013 (emphasis added) (attached as Exhibit 2)); *accord Morgan Drexen*, 979 F. Supp. 2d at 109.

Twenty-six days later, during the midst of the briefing schedule in this Court to which the Bureau agreed, the Bureau filed an enforcement action in the Central District of California and subsequently provided Judge Kollar-Kotelly notice that it had done so. (*See* Notice, Aug. 20, 2013 (attached as Exhibit 3)); *accord Morgan Drexen*, 979 F. Supp. 2d at 110. As a result, Judge Kollar-Kotelly declined to grant the plaintiff equitable relief because "another federal court action provides [p]laintiff an adequate remedy, and the denial of injunctive relief would not subject them to irreparable harm." *Morgan Drexen*, 979 F. Supp. 2d at 116. On appeal, the D.C. Circuit affirmed that decision because plaintiff "failed to show the district court abused its discretion in concluding that [plaintiff] had an adequate remedy at law in the enforcement action filed by the Bureau." *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 698 (D.C. Cir. 2015).

In effect, the Bureau mooted the plaintiff's claims for injunctive relief by filing suit in the Central District of California. Once the Bureau filed that action, thereby inflicting all harm associated with the public filing, there was nothing left for Judge Kollar-Kotelly to enjoin and the plaintiff was forced to raise its defenses in California. That is precisely the outcome Plaintiff seeks to avoid here.

Furthermore, Judge Kollar-Kotelly relied on a "presum[ption] that agency enforcement actions are brought in good faith and that the Bureau will not simply manufacture a spurious enforcement action in order to turn a constitutional plaintiff into an enforcement defendant." *Morgan Drexen*, 979 F. Supp. 2d at 116. That presumption is unwarranted here because of the ongoing separation of powers violation. The Director wields so much power with so little oversight that the Bureau is currently unconstitutional. Plaintiff should not have rely on the

Bureau's good faith exercise of those powers. To the contrary, the Constitution effects the Framer's understanding that men are not angels and must therefore be subject to checks and balances. *See Coleman v. Balkcom*, 451 U.S. 949, 962 (1981) (Rehnquist, J., dissenting from denial of certiorari) ("If angels were to govern men, neither external nor internal controls on government would be necessary." (quoting The Federalist Papers 322 (James Madison) (1961)).

The Bureau has the absolute, unreviewable power to inflict irreparable harm on Plaintiff by instituting an enforcement action against it. The Constitution requires that limits be placed on that power. This Court should therefore restrain the Bureau from taking any action adverse to Plaintiff until the Bureau is constitutionally structured.

### c. The Bureau Is Threatening to Cause Specific and Irreparable Harm to Plaintiff's Business and Reputation

In addition to the constitutional injury—which itself requires injunctive relief—Plaintiff will suffer irreparable harm to its business if the Bureau is not enjoined. Most directly, the Bureau has decided to publicize its unconstitutional investigation of Plaintiff on or after January 13, 2017. The publication of this investigation will itself cause Plaintiff to go out of business and will harm hundreds of innocent people, including Plaintiff's employees and agents.

Plaintiff employs and contracts with more than 100 people who provide various sales, accounting, collections, operational, and other services to Plaintiff. (Compl. ¶ 62.) To Plaintiff's knowledge, none of these people knows that the Bureau is investigating Plaintiff's business practices. (*Id.*) Were they to become aware of such an investigation, most of these employees and agents would immediately begin looking for other employment. (*Id.*) This is so because the Bureau is investigating whether Plaintiff's core business—purchasing future income streams— violates the Bureau's interpretation of federal consumer financial law. (*Id.*) This investigation imperils Plaintiff's very existence. (*Id.*) Plaintiff's employees and agents will recognize this

reality, and many will decide that they can no longer depend on Plaintiff as the source of income for themselves and their families. (*Id.*)  Employees will also resign for fear that continued employment and participation in Plaintiff's business practices may subject them personally to civil or criminal liabilities. (*Id.*)

Plaintiff also depends on various service providers to hold and transfer money, facilitate the purchase and sale of income streams, and otherwise keep Plaintiff's business running. (Compl. ¶ 63.)  These providers are sophisticated entities that are wary of adverse publicity or entanglement with the Bureau. (*Id.*)  They will sever their relationships with Plaintiff if the Bureau's investigation becomes public. (*Id.*)  The loss of these relationships will prevent Plaintiff from functioning, thereby causing Plaintiff's employees to lose their livelihood and harming the third parties that have contracted with Plaintiff to buy income streams. (*Id.*)

In short, "avoiding public knowledge of an inchoate federal investigation" is an interest "that the law often treats as substantial (and at times controlling)." *John Doe Co. No. 1 v. CFPB*, No. 15-CV-1177 (RDM), 2016 WL 3390677, at *6 (D.D.C. June 15, 2016).  The Bureau has massive, unconstrained power in the consumer-financial marketplace. *See PHH Corp.*, 839 F.3d at 17 ("[W]ithin his jurisdiction, the Director of the CFPB can be considered even more powerful than the President.  It is the Director's view of consumer protection law that prevails over all others.").   The Bureau's decision to announce its investigation will signal to Plaintiff's employees, customers, consultants, and other contacts that Plaintiff is in mortal danger because it would indicate that the "President of Consumer Finance" believes that Plaintiff is the appropriate target of Bureau action. *Id.*

### III.    The Balance of Equities and Public Interest Favor an Injunction

Plaintiff's showing that the Bureau is violating the Constitution establishes that the
balance of equities and the public interest favor injunctive relief. These two factors "merge
when the Government is the opposing party." *Morales v. Sec'y, U.S. Dep't of State*, No. 16-CV-
1333 (CKK), 2016 WL 6304654, at \*4 (D.D.C. Oct. 27, 2016) (quoting *FBME Bank Ltd. v. Lew*,
125 F. Supp. 3d 109, 127 (D.D.C. 2015)); *accord Nken v. Holder*, 556 U.S. 418, 435 (2009).
And both of those factors support injunctive relief because "enforcement of an unconstitutional
law is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir.
2013); *accord Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("[I]t is always in the public
interest to prevent the violation of a party's constitutional rights." (quoting *G & V Lounge, Inc.
v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994))).

The public interest also favors preventing any person from accumulating enormous
legislative, executive, and judicial power in his or her hands and then continuing to wield that
power even after a federal court of appeals has determined that the exercise of those powers
violates the constitution. *See In re Aiken Cty.*, 725 F.3d 255, 264 (D.C. Cir. 2013) ("The
accumulation of all powers, legislative, executive, and judiciary, in the same hands . . . may
justly be pronounced the very definition of tyranny." (quoting The Federalist No. 47, at 269
(James Madison) (Clinton Rossiter ed., rev. ed. 1999))). The Bureau exercises legislative power
by enacting regulations with the force of law, executive power by policing compliance with
those regulations, and judicial power by adjudicating enforcement actions and imposing
sanctions on those found to have violated those regulations.

The D.C. Circuit's analysis in *League of Women Voters of United States v. Newby* is
instructive. 838 F.3d 1 (D.C. Cir. 2016). There, the Court of Appeals held that the plaintiff-
appellants' "extremely high likelihood of success on the merits is a strong indicator that a

25

EXHIBIT 12
239

preliminary injunction would serve the public interest" because "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Id.* at 12. "To the contrary, there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Id.* (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). This Court should defend that substantial public interest by enjoining the Bureau from taking any further action adverse to Plaintiff unless and until the Bureau is constitutionally structured.

## CONCLUSION

The Bureau currently possesses the unrestrained power to use the machinery of government to ruin Plaintiff's business. This accumulation of power in the hands of one unelected, unaccountable person is anathema to the separation of powers that protect our constitutional democracy. And the courts' equitable authority is the only protection against incremental diminutions of those structural protections.

Plaintiff respectfully requests that this Court maintain the status quo so that it can consider the merits of Plaintiff's claim—and so that the Bureau cannot use its unchecked power to moot that claim. Plaintiff's ability to challenge an agency's unconstitutional structure cannot depend on whether that agency chooses to allow the challenge to go forward.

EXHIBIT 12

This the 9th day of January, 2017.

**WOMBLE CARLYLE SANDRIDGE &
RICE LLP**

/s/ Christopher W. Jones
Christopher W. Jones
*Pro Hac Vice Motion Pending*
Samuel B. Hartzell
*Pro Hac Vice Motion Pending*
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone:  (919) 755-8173
Facsimile:  (919) 755-6180
E-mail:  cjones@wcsr.com
         shartzell@wcsr.com

Cathy A. Hinger
DC Bar No. 473697
1200 Nineteenth Street NW, Suite 500
Washington, DC 20036
Telephone: (202) 857-4489
Facsimile: (202) 261-0029
E-mail: chinger@wcsr.com

**DORSEY & WHITNEY LLP**

/s/ Ji-Hyun Jennifer Lee
Ji-Hyun Jennifer Lee
DC Bar No. 1029193
1801 K Street NW, Suite 750
Washington, DC 20006
Telephone: (202) 442-3572
Facsimile: (202) 315-3682
E-mail: lee.jenny@dorsey.com

Eric Epstein
*Pro Hac Vice Motion Pending*
51 West 52nd Street
New York, NY 10019-6119
Telephone: (212) 415-9309
Facsimile: (718) 877-3719
E-mail: epstein.eric@dorsey.com

*Attorneys for Plaintiff*

27
EXHIBIT 12
241

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Memorandum Supporting Plaintiff's Motion for

Temporary Restraining Order and Preliminary Injunction with the Clerk of Court.

I hereby further certify that a copy of the foregoing Memorandum Supporting Plaintiff's

Motion for Temporary Restraining Order and Preliminary Injunction has been hand served on

Defendants at the following addresses:

Consumer Financial Protection Bureau
1700 G St NW
Washington, DC 20552

Richard Cordray
Director of the Consumer Financial Protection Bureau
1700 G St NW
Washington, DC 20552

This the 9th day of January, 2017.

WOMBLE CARLYLE SANDRIDGE & RICE LLP

Cathy A. Hinger
DC Bar No. 473697
1200 Nineteenth Street NW, Suite 500
Washington, DC 20036
Telephone: (202) 857-4489
Facsimile: (202) 261-0029
E-mail: chinger@wcsr.com

*Attorney for Plaintiff*